IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDGAR GARCIA GARFIAS,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

No. 3:23-cv-01031-AB

OPINION AND ORDER

**BAGGIO, District Judge:**

On August 5, 2020, United States Immigration and Customs Enforcement ("ICE") officers (collectively, "Officers"), acting on a warrant for the arrest and deportation of an individual named "Edgar Garcia Garfias," conducted a vehicle stop of Plaintiff Edgar Garcia Garfias ("Plaintiff"). Declaration of Chatham McCutcheon ("McCutcheon Decl.", ECF 27), ¶¶ 5, 8-10. Minutes after the stop, the Officers discovered that Plaintiff was not the same person as the subject of their warrant and informed Plaintiff that he was free to leave. *Id*. ¶¶ 12, 14. Almost three years later, Plaintiff filed tort claims against Defendant United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"). Complaint ("Compl.", ECF 1). Defendant now moves for summary judgment. ("Mot.", ECF 24). For the reasons set forth below, the Court GRANTS Defendant's Motion.

BACKGROUND

    A.  **Two Individuals Named Edgar Garcia Garfias**

Plaintiff is a United States citizen who was born and raised in Oregon. Exhibit 2 to the Declaration of Patrick J. Conti ("Garcia Garfias Depo.", ECF 33), 15:24-25. Plaintiff's physical

1 - OPINION AND ORDER

characteristics include being male, Hispanic Mexican, with black hair, brown eyes, 5'8" tall, and 165 pounds. *Id*. at 13:13-21, 15:3-6; Declaration of Patrick J. Conti ("Conti Decl.", ECF 26) Ex. 1, 10:6-15. Plaintiff lived in a mobile home park in Forest Grove, Oregon, and then in a house in Cornelius, Oregon. Garcia Garfias Depo., 91:9-14; 93:9-21. Currently, Plaintiff resides in Cornelius, Oregon, and he is a police officer for the Hillsboro Police Department. Garcia Garfias Depo., 90:9-10; Declaration of Edgar Garcia Garfias ("Garcia Garfias Decl.," ECF 57), ¶ 1.[1]

Like Plaintiff, the subject of the Officers' arrest warrant also has the name Edgar Garcia Garfias ("subject Garcia Garfias"). McCutcheon Decl., ¶¶ 5, 8. Subject Garcia Garfias is a Mexican citizen, who became the subject of an I-205 Warrant of Removal/Deportation when he failed to report to his previously ordered removal on June 10, 2016. *Id*. at ¶ 6. According to Officer Jacob James, subject Garcia Garfias has similar physical characteristics—including sex, age, and height—to Plaintiff. Declaration of Jacob James ("James Decl.", ECF 32) ¶ 7. Subject Garcia Garfias and Plaintiff also share two of the same prior residences. Declaration of Alexander Adler ("Adler Decl.", ECF 31) ¶¶ 3, 5, 10.

**B. The Investigation**

After subject Garcia Garfias did not report for his removal on June 10, 2016, ICE placed Officers Jeffery Chan and Alexander Adler in charge of locating him. Adler Decl., ¶ 2. Between

---

[1] Defendant argues that the Court should exclude Plaintiff's unsworn declaration in deciding this motion. Defendant's Reply to Motion for Summary Judgment ("Reply", ECF 60), at 3-4. Because the Court finds that Plaintiff's Declaration substantially complies with 28 U.S.C. § 1746, *see Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd*., 205 F.3d 1107, 1112 (9th Cir. 1999), *as amended* (Mar. 23, 2000), the declaration is not excluded. The Court will not address Defendant's argument that the Declaration of David Hannon (ECF 46), Exhibit 17 (ECF 47), and Exhibit 20 (ECF 47, Ex. 1) should be excluded because the Court's ruling is not impacted by the admissibility of these documents.

2016 and 2020, the Officers unsuccessfully attempted to find subject Garcia Garfias by researching and surveilling several addresses found in open-source databases. *Id.* In 2020, one of the databases revealed a new residential address lead for subject Garcia Garfias. *Id*. at ¶ 3. This lead was Plaintiff's house in Cornelius, Oregon. *Id*. at ¶¶ 3-4.

On August 4, 2020, Officers Adler and Jacob James pursued the address lead and conducted surveillance at Plaintiff's house. *Id.* at ¶ 4. While surveilling the house, Plaintiff's vehicle approached, and Officer Adler entered the vehicle's license plate number into a law enforcement database. *Id*. He discovered the vehicle was registered to an Edgar Garcia Garfias. *Id*. Officer James then watched Plaintiff exit the vehicle and perceived Plaintiff's physical characteristic to be consistent with that of subject Garcia Garfias. James Decl., ¶¶ 4, 7.

### C. The Arrest

Based on the perceived match with subject Garcia Garfias, Officer Adler assembled a team of five officers to apprehend Plaintiff. Adler Decl., ¶ 6. On August 5, 2020, Officers Conrad Salvato and Chatham McCutcheon conducted a vehicle stop of Plaintiff. Declaration of Conrad Salvato ("Salvato Decl.", ECF 28), ¶ 4. Officer McCutcheon was the first to approach Plaintiff's vehicle, and he asked Plaintiff his name. Salvato Decl., ¶ 5. When Plaintiff said his name was Edgar Garcia Garfias, Officer McCutcheon requested that he step out of his vehicle. *Id*. Plaintiff informed Officer McCutcheon that he was a police officer and offered to provide his police ID as proof. *Id*. According to Plaintiff, Officers McCutcheon and Salvato told him that they had a warrant for his arrest and placed his hands behind his back.[2] Garcia Garfias Depo., 33:15-17, 34:16-17.

---

[2] Officers McCutcheon and Salvato maintain that they never "placed handcuffs, drew weapons, physically touched, or restrained the Plaintiff, or told Plaintiff he was under arrest." Salvato Decl., ¶ 5; McCutcheon Decl., ¶ 11.

3 - OPINION AND ORDER

After Plaintiff stepped out of his vehicle, Officer Adler approached Plaintiff and discovered that Plaintiff's likeness did not match the photograph contained in subject Garcia Garfias' Field Operations Worksheet ("FOW"). McCutcheon Decl., ¶ 12. Officer Adler then showed Plaintiff subject Garcia Garfias' FOW and asked Plaintiff if the individual in the photograph was him. *Id*. at ¶ 13. Plaintiff said no and further informed Officer Adler that his birthday and father's name differed from what was described in the FOW but that one of the addresses matched one of his prior addresses. *Id*.; Adler Decl., ¶¶ 9-10. According to Officer Adler, Plaintiff expressed concerns that subject Garcia Garfias may have stolen Plaintiff's identity. Adler Decl., ¶ 10. When the Officers' realized Plaintiff was not the true subject of their warrant, they "let [Plaintiff] go right away." McCutcheon Decl., ¶¶ 12, 14; Garcia Garfias Depo., 35:9-10.

Plaintiff stated that the vehicle stop lasted approximately two and a half minutes. Garcia Garfias Depo., 140:1-5. The Officers estimate the stop lasted less than five minutes. Adler Decl., ¶ 11. Plaintiff describes the Officers' conduct as cordial and professional and accepts that the Officers "strongly believed" he was subject Garcia Garfias. Garcia Garfias Depo., 42:6-23, 89:19-22. Plaintiff's supervisor—Hillsboro Police Department Lieutenant Neil Potter—recalled that Plaintiff explained to him shortly after the incident that "there was enough similarities that [Plaintiff] understands how they could have come to that conclusion." Conti Decl., Ex. 4, 14:1-6 (cleaned up). Nevertheless, Plaintiff asserts that "[i]n the course of this interaction, I experienced severe emotional and mental distress." Garcia Garfias Decl., ¶ 15.

### D. Procedural History

Almost three years after the incident, Plaintiff initiated this action against the United States. *See* Compl. Plaintiff alleges three claims under the FTCA: (1) false arrest/false imprisonment, (2) negligence per se, and (3) intentional and negligent infliction of emotional distress. First Amended

4 - OPINION AND ORDER

Complaint ("FAC", ECF 11) ¶¶ 19-29. Plaintiff explains that he suffered "depression, sleeplessness, and other feelings unique to this experience" following the incident but admits that he suffered no physical injury. Garcia Garfias Decl., ¶ 18; Garcia Garfias Depo., 89:25-90:4.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the case's outcome. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). A material fact creates a genuine dispute if a reasonable jury could find in favor of the nonmoving party. *Id.* The moving party must establish no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must establish a genuine dispute by pointing to evidence outside the pleadings. *Id.* at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the evidence must be viewed in the light most favorable to the nonmoving party, summary judgment is warranted if a reasonable jury, viewing the record in its entirety, could not find for the nonmoving party. *Id.* at 587.

## DISCUSSION

Defendant moves for summary judgment on the ground that the discretionary function exception to the FTCA applies and, therefore, this Court lacks subject matter jurisdiction to hear Plaintiff's claims. Mot., at 10. Alternatively, Defendant argues that, even if this Court has subject matter jurisdiction, Plaintiff's claims fail as a matter of law. *Id*. As discussed further below, the Court finds that the discretionary function exception to the FTCA applies and, therefore, this Court has no subject matter jurisdiction to hear Plaintiff's claims. As such, the Court need not address

whether Plaintiff's claims fail as a matter of law.

### I. The Discretionary Function Exception Applies And Removes This Court Of Subject Matter Jurisdiction

"An action can be brought by a party against the United States only to the extent that the Federal Government waives its sovereign immunity." *Esquivel v. United States*, 21 F.4th 565, 572 (9th Cir. 2021) (quoting *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). "Under the FTCA, the United States has waived its sovereign immunity for certain tort[s]" committed by federal employees acting within the scope of their employment. *Id*. at 573; *see* 28 U.S.C. §§ 1346(b), 2671-2680. Nevertheless, several exceptions exist to the FTCA's broad waiver of immunity. *Esquivel,* 21 F.4th at 573. One such exception is the discretionary function exception. *Id.*; *see* 28 U.S.C. § 2690(a). "Where the discretionary function exception applies", sovereign immunity is not waived, and "no federal subject matter jurisdiction exists." *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). Here, the United States has waived sovereign immunity for Plaintiff's tort claims against the United States under the FTCA. 28 U.S.C. §§ 2680(h), 2674; *see* FAC, ¶¶ 18-29. Nevertheless, as discussed further below, the Court finds that the discretionary function exception applies and removes this Court of subject matter jurisdiction.

### A. The Law Enforcement Provision Does Not Prevent Application Of The Discretionary Function Exception

As an initial matter, Plaintiff argues that the discretionary function exception does not bar his false arrest claim because it falls within the FTCA's "law enforcement proviso," which waives sovereign immunity for intentional torts committed by law enforcement officers acting within the scope of their employment. Plaintiff's Response in Opposition to Motion for Summary Judgment ("Resp.", ECF 42), 13-17; *see* 28 U.S.C. § 2680(h). However, the Ninth Circuit has made clear that the liability created by the law enforcement proviso is still subject to the FTCA discretionary

function exception. *Gosho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) ("If a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under [28 U.S.C.] § 2680(h)."). Accordingly, the Court finds that the law enforcement proviso does not prevent application of the discretionary function exception to Plaintiff's false arrest claim.

### B.  Defendant Satisfies The Discretionary Function Exception Two-Part Test

To determine whether the discretionary function exception applies, the Court must engage in a "particularized analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002). "First, courts must determine whether the challenged actions involve an 'element of judgment or choice.'" *Esquivel*, 21 F.4th at 573. (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If the conduct satisfies this first step, the Court must next determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Esquivel*, 21 F.4th at 574 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The focus is on "government actions and decisions based on 'social, economic, and political policy.'" *Id*. (quoting *Berkovitz,* 486 U.S. at 537). The Government bears the burden to prove the exception applies. *Esquivel*, 21 F.4th at 574. Here, Defendant contends that the challenged conduct satisfies the discretionary function exception two-part test because the Officers' conduct was discretionary and susceptible to a policy analysis. Mot., at 11-24. Before deciding whether Defendant can satisfy the exception, though, the Court must first define the conduct at issue.

#### i.  *Definition Of The Conduct At Issue*

The parties disagree as to the definition of the conduct at issue. Defendant argues that the conduct at issue is the "scope and manner of the [Officers'] investigation and the decision of

whom, if anyone, to apprehend based on that investigation." Mot., at 13. Plaintiff, by contrast, asserts that the conduct at issue is the Officers' investigation and arrest of a *United States citizen*.³ Resp., at 18-19.

Consistent with Defendant's definition, Plaintiff challenges the Officers' investigation and decision to apprehend Plaintiff based on the available facts, not based on the fact he is a United States citizen. *See* FAC, ¶ 24 (challenging the Officers' failure to "verify the identity of Plaintiff . . . before deciding to unlawfully stop, arrest, and detain [him]"), ¶ 27 (challenging the Officers' act of ordering Plaintiff outside his vehicle and placing his hands behind his back, "[d]espite Plaintiff's assertions that he was not the person that [the Officers] were seeking"). Plaintiff does not allege or cite evidence that the Officers intentionally targeted Plaintiff as a United States citizen, and, instead, admits that the Officers "strongly believed" he was subject Garcia Garfias— a non-citizen subject of an I-205 Warrant of Removal/Deportation. Conti Decl. (ECF 33), Ex. 2, at 89:19-21. The Court therefore adopts Defendant's definition of the conduct at issue.

### ii. *Part One: Defendant's Conduct Involved Elements Of Judgment*

With the relevant conduct at issue in mind, the next consideration is whether the conduct "involve[d] an element of judgment or choice." *Esquivel*, 21 F.4th at 573. Where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," there is no element of choice. *Berkovitz*, 486 U.S. at 536. On the other hand, "[w]hen a specific course of action is not prescribed . . . an element of choice or judgment is likely involved in the decision or action." *Terbush v. United States*, 516 F.3d 1125, 1129 (2008). The Ninth Circuit has recognized that decisions regarding the manner and scope of law enforcement investigations involve elements

---

³ The parties dispute whether Plaintiff was, in fact, arrested during the vehicle stop. Defendant does not concede but assumes, for purposes of this motion that Plaintiff was arrested. *See* Mot., at 6 n.2.

of judgment. *See, e.g., Arteaga-Ruiz v. United States*, 705 F. App'x 597, 598 (9th Cir. 2017) (finding that an immigration officer's investigation and wrongful arrest of a United States citizens involves elements of judgment); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) (finding that the "decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General"); *Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996) (finding the investigative acts of the Naval Investigative Service and the Office of the Judge Advocate General officers discretionary). For example, in *Chavez v. United States*, No. 3:22-cv-00107-IM, 2023 WL 2071555, at *11-12 (D. Or. Feb. 17, 2023), the Marshals' investigation and execution of an arrest warrant on the wrong person involved elements of judgment for purposes of the discretionary function exception, even though the judgment was poor.

Plaintiff provides no relevant statute, regulation, or policy that "specifically prescribes a course of action" for the Officers to follow in investigating and apprehending noncitizens. *Berkovitz,* 486 U.S. at 536. Instead, Plaintiff relies on 18 U.S.C. § 4001(a) to support his position that the Officers' conduct violated existing policy. Resp., at 19. However, section 4001(a) is not persuasive here because the statute is broad and does not specifically prescribe a course of conduct. *See* 18 U.S.C. § 4001(a) ("No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress."). Rather, pursuant to 8 U.S.C. § 1357, Congress entrusts the Officers with discretion in investigating and detaining individuals who are unlawfully in the United States. *See* 8 U.S.C. § 1357(a)(2) (granting ICE officers authority "to arrest any alien in the United States, if he has *reason to believe* that the alien so arrested is in the United States in violation of such law or regulation") (emphasis added). Analogous to *Chavez*, in which the court found that the Marshals' decisions to investigate and arrest the wrong individual involved elements of judgment, the Officers' decision to surveille and detain Plaintiff—who had the same name,

9 - OPINION AND ORDER

similar physical characteristics, and two of the same prior addresses as the subject of their warrant—necessarily required the Officers to exercise judgment in determining whether they had enough information to verify Plaintiff's identity. *Chavez* 2023 WL 2071555, at *11-12. The Court therefore concludes that Defendant satisfies the first part of the discretionary function exception inquiry.

### iii. Part Two: Defendant's Conduct Is Susceptible To Policy Analysis

Having determined that the challenged conduct involves "an element of judgment or choice," the Court next considers whether the conduct is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. "Where the government agent is exercising discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Esquivel*, 21 F.4th at 574 (quoting *Gaubert*, 499 U.S. at 324). The Ninth Circuit has found that "[i]nvestigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." *Sabow*, 93 F.3d at 1453. Other circuits have confirmed that the identification of a suspect named in a warrant, and the subsequent decision to arrest that suspect, involve policy considerations. *See Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012) ("We agree . . . that the process of verifying whether the apprehended person is actually the suspect named in the warrant 'is grounded in considerations of public policy' . . ."); *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) ("We readily conclude that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature . . .").

Given the presumption that discretionary acts are grounded in policy, the Officers' conduct is "susceptible to policy analysis." *Esquivel*, 21 F.4th at 574. The decision to investigate and

apprehend Plaintiff clearly required the Officers to consider policy, for example, when deciding whether additional law enforcement investigative resources were necessary to ensure that Plaintiff was, in fact, their desired target. *See Mesa*, 132 F.3d at 1438; *see also Sabow*, 93 F.3d at 1453. Plaintiff's argument that "it is illegal and against policy and procedure to arrest, detain, and deport a United States citizen[,]" is not relevant to the question of whether the Officers' conduct was grounded in policy. *See* Resp., at 19. Accordingly, the Court concludes that Defendant has satisfied the discretionary function exception two-part test.

### C. The Fourth Amendment Does Not Preclude Application Of The Discretionary Function Exception

Even when the discretionary function exception two-part test is satisfied, the Constitution may limit the discretion of the Officers such that the exception will not apply. *Nurse v. United States,* 226 F.3d 996, 1002 (9th Cir. 2000); *see Nieves Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021) ("Even if the agents' actions involved elements of discretion, agents do not have discretion to violate the Constitution.").

As an initial matter, Defendant argues that the Court should not consider whether the Officers' conduct violated the Fourth Amendment because Plaintiff does not specifically allege a constitutional violation. Mot., at 21. The Ninth Circuit considers the constitutionality of challenged conduct even when a plaintiff does not raise a constitutional claim. *See Nieves Martinez*, 997 F.3d at 879 (considering a Fourth Amendment challenge when the plaintiff only asserted claims under the FTCA). Although Plaintiff should have explicitly challenged the constitutionality of the Officers' conduct, the Court will still consider the Fourth Amendment in deciding whether the discretionary function exception applies.

11 - OPINION AND ORDER

Whether the Officers' investigation and detention of Plaintiff violated the Fourth Amendment depends on whether they had a "good faith, reasonable belief that the arrestee was the subject of the warrant." *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014)*; see Hill v. California*, 401 U.S. 797, 802 (1971) ("[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment[.]" *Hill*, 401 U.S. at 804; *see Rivera*, 745 F.3d at 389 (finding officers were not unreasonable in believing that a plaintiff was the subject of the warrant at the time of his arrest given that the plaintiff's name, date of birth, and physical descriptors matched that of the true subject of the warrant); *cf. Gant v. County of Los Angeles,* 772 F.3d 608, 622 (9th Cir. 2014) (finding officers' failure to further investigate whether the plaintiff was the true subject of a warrant unreasonable because there were significant discrepancies between the physical descriptors on the plaintiff's driver's license and that of the subject on the warrant).

The Officers had a good faith reason to believe that Plaintiff was subject Garcia Garfias given that Plaintiff had the same name, shared multiple prior addresses, and differed on paper only by minor height and weight differences. *See Rivera*, 745 F.3d at 389. Even Plaintiff and his wife agree that subject Garcia Garfias was similar enough to Plaintiff to have possibly stolen his identity. *See* Conti Decl. Ex. 1, 27:7-28:16; 54:15-21; *see also* Garcia Garfias Depo., 89:19 (Plaintiff admitting that the Officers "strongly believed [he] was" the subject of the warrant). Contrary to Plaintiff's assertion that the Officers "did nothing to identify the person listed in the warrant[,]" *see* Resp., at 21, the record clearly shows that the Officers took efforts to identify and locate subject Garcia Garfias by consulting subject Garcia Garfias' FOW that described his pertinent characteristics; discovering a new residential address for subject Garcia Garfias through

12 - OPINION AND ORDER

a commercial database; and surveilling the house to discover that the resident shared similar physical characteristics to, and owned a car registered to the same name as, subject Garcia Garfias. *See* McCutcheon Decl., ¶6; Adler Decl., ¶¶ 3-4.

The only potential red flag Plaintiff raises is that the Officers checked the license plate of Plaintiff's vehicle while surveilling his home, and Plaintiff's vehicle was registered to the same address as the Hillsboro Police Department. Resp., at 11. Plaintiff, however, provides no evidence that the Officers knew that the address listed on Plaintiff's license registration was the same address as the police department, or that the Officers "pulled up a DMV photograph of Plaintiff[.]" *Id*. Given Plaintiff's failure to identify any evidence revealing a significant physical discrepancy between him and subject Garcia Garfias, it was not unreasonable for the Officers to apprehend Plaintiff based on the available information. *Cf. Gant*, 772 F.3d at 622. The Officers conduct did not violate the Fourth Amendment and the discretionary function exception applies. Accordingly, this Court does not have subject matter jurisdiction to hear Plaintiff's claims, and Defendant's Motion is granted.

### D. Plaintiff Does Not Have Leave To Amend

Plaintiff requests leave to amend his complaint "should the court find the pleadings are insufficient[.]" Resp., at 25. The parties' deadline to amend pleadings was January 1, 2024, (ECF 15), and Plaintiff has not given any basis for why "good cause" exists to grant him leave to amend. *See Robillard v. Opal Labs, Inc*., 337 F. Supp. 3d 962, 967 (D. Or. 2018) (finding that once a scheduling order has been entered, "the party requesting an amendment must first show 'good cause' under Rule 16(b) and then show that its proposed amendment is proper under Rule 15(a)"); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607-08 (9th Cir. 1992). As such, the Court denies Plaintiff's request for leave to amend his complaint.

13 - OPINION AND ORDER

### E. The Court Will Not Defer It's Ruling For Additional Discovery

Plaintiff further requests the Court to defer ruling on Defendant's Motion until the parties have conducted additional discovery. Resp., at 25. "To prevail on a request for additional discovery under Rule 56(d), a party must show that '1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; 2) the facts sought exist; and 3) the sought-after facts are essential to oppose summary judgment.'" *Midbrook Flowerbulb Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619-20 (9th Cir. 2017) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)). Not only has the Court already rejected an attempt by Plaintiff to reopen discovery, (ECF 23), but Plaintiff has not provided the Court with an affidavit or any explanation as to why additional discovery is necessary for the Court to rule on Defendant's Motion. The Court therefore denies Plaintiff's request to reopen discovery.

### CONCLUSION

For the above stated reasons, Defendant's Motion for Summary Judgment (ECF 24) is GRANTED. Accordingly, Plaintiff's claims against Defendant are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 6th day of January, 2025.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge

14 - OPINION AND ORDER